418 So.2d 445 (1982)
Richard P. NIESZ, Appellant,
v.
Arthur H. GEHRIS, III, et al., Appellees.
No. 81-668.
District Court of Appeal of Florida, Fifth District.
August 25, 1982.
*446 Richard P. Niesz, pro se.
Eric A. Latinsky of Gary Smigiel, P.A., Daytona Beach, for appellee Gary Smigiel.
COWART, Judge.
This case involves an action by buyers of land to rescind their purchase money mortgages because of failure of the seller to perform a covenant in the purchase contract.
Cushway owned a building subject to a first mortgage to Security First Federal and a second mortgage to appellant Niesz. Cushway, as seller, contracted to sell the property to appellees Gehris and Smigiel, as buyers, who agreed to assume the first and second mortgages and to execute third and fourth mortgages back to Cushway to secure a portion of the purchase price. The Cushway-Gehris-Smigiel contract of sale contained a provision that the building would be delivered to the purchasers in full compliance with all municipal building codes. The transaction was closed and thereafter the seller assigned to Steinbach his right to payments due under the purchase money promissory notes. Thereafter, the buyers filed a complaint against Cushway and Steinbach. The complaint was repeatedly dismissed and amended. At one point, Steinbach filed a document stating that appellant Niesz had some interest in the purchase money notes and mortgages; the third amended complaint included Niesz as a defendant. Niesz then filed a notice showing that Cushway and Steinbach had assigned to him, Niesz, all of their interest in the purchase money notes and mortgages. A fourth amended complaint sought (count I) money damages from Cushway for breach of the sales contract provision that *447 the building would comply with all municipal building code standards; (count II) compensatory and punitive damages for a misrepresentation that Cushway allegedly made at closing as to the building complying with all municipal building code standards, (count III) to set aside the purchase money notes and mortgages because there was no consideration for them because of Cushway's breach of the sales agreement as alleged in count I, (count IV) an adjudication that the assignment to Niesz was void because it was made after the filing of a lis pendens in the cause, and (count V) a declaratory decree that the buyer did not have to pay on the purchase money note and mortgage until the court adjudicated the cause.
Apparently, Niesz filed a separate action to foreclose both purchase money mortgages, then moved to have his foreclosure action consolidated with the buyers' action. This was done. At the commencement of the final hearing on the consolidated cases, the court indicated to counsel that there was some basic conflict between counts I and II seeking monetary damages and count III, whereupon counsel for the buyers indicated they were seeking to set aside, rescind or cancel the outstanding mortgages only and took an involuntary dismissal without prejudice as to the claims against Cushway for damages for breach of contract and fraud (counts I and II).
The trial court found and adjudicated: (1) that Cushway breached the sales contract covenant by failing to deliver the building in full compliance with all municipal building codes and with resulting damages to the buyers of $14,208.90; (2) that the buyers were $2,498.28 in arrears on the purchase money mortgage indebtednesses; (3) that Cushway made a misrepresentation as to the condition of the building; (4) that as a result of Cushway's misrepresentation it would be inequitable to permit Niesz to accelerate the two purchase money mortgages; (5) that as to the $14,208.90 damages the buyers suffered, they would receive credit against the purchase money mortgages; $2,498.28 on the present arrearages and $11,710.62 as a setoff against the principal indebtedness of the third mortgage; and (6) that if the buyers did not otherwise made the mortgages current within 30 days, upon application of Niesz, a judgment of foreclosure would be entered. Niesz appeals.
If the seller had falsely and knowingly represented that his building complied with all existing municipal building code standards and that misrepresentation was material, and the buyers had relied on (and been induced by) that misrepresentation in contracting to buy the building and had thereby suffered damages, the buyers could have either affirmed the contract and sued for monetary damages or could have disaffirmed and sued to rescind the contract.[1] The buyers could not have done both. In the latter instance, to obtain the remedy of rescission the buyers would have had to do equity by reconveying the property and all benefits received and in exchange would have been entitled to a return of all purchase money paid and if, when the misrepresentation was discovered, the transaction had already been closed, the buyers would have then been entitled to have had their purchase money notes and mortgages cancelled in the hands of the seller or others who were not good faith purchasers of such notes and mortgages. If for any reason the sellers were unable to themselves do equity or if for any reason the court could not effectively require the seller to restore the buyers' consideration to them (such as if the purchase money notes and mortgages had been transferred to a good faith purchaser), then rescission would not be a proper remedy and the parties would be relegated to their remedies at law. However, in this case there is no suggestion that the seller's representation as to the building's compliance with the building code was made to induce the buyers to enter into the contract of sale.
The contract in this case contains a provision that the building would be delivered *448 to the buyers in compliance with all building code standards. This implies that at the time the contract was executed the building may not have been up to code and that one of the seller's contractual covenants was to put the building in that condition prior to delivery of the building to the buyers at closing. If this covenant was not performed at the time the contract provided for closing, but could be performed within a reasonable time, the buyers could have deferred closing until this condition was performed. If nonperformance of this covenant was not waived and was not discovered until after closing for some excusable reason (such as a misrepresentation as to that matter by the seller as alleged in count II of the complaint) such an executory covenant would survive the closing.[2] The buyers could then affirm the contract and sue on the contract for compensatory damages sufficient to place the building in compliance with all building code standards as promised (this was the cause of action alleged in count I of the complaint) or, if such performance was a material and substantial provision of the contract, the buyer could disaffirm the contract and sue to rescind the contract.[3] As in the case of fraud in the inducement, the buyers could not both rescind and recover money damages. In an action for rescission for substantial nonperformance of a contract, as in an action for rescission for misrepresentation in the inducement to enter into the contract, the buyers would have to return the property and all benefits received and would have been entitled to recover all funds paid and cancellation of their purchase money notes and mortgages. The cancellation of such purchase money notes and mortgages under these circumstances is but one incident of a rescission of the contract itself, part of the performance of which was the execution of such purchase money note and mortgage by the buyer. In this case, the buyers did not seek rescission of the contract for sale and purchase of the building and were, accordingly, not entitled to cancellation of their purchase money notes and mortgages, to suspend payment on them, or to any declaratory decree to that effect. Therefore, counts III and V did not state a cause of action under the circumstances alleged.
The title to the property which was the subject of the sales contract was in the buyers when this action was filed and the buyers sought no in rem relief against that property. For both of these reasons, the buyers had no proper reason to file a notice of lis pendens against the property incidental to their action and that notice served no legal purpose.
The buyers' cause of action for breach of the contractual covenant relating to making the building comply with all municipal code standards was an action in personam against Cushway, the contracting party, for money damages.
The transfer of the purchase money notes and mortgages by the seller Cushway to appellant Niesz was effective to transfer the debts evidenced by such promissory notes. This is so, not because Niesz was a good faith purchaser, but because the notes are transferable and the buyer's claim against Cushway for money damages for breach of contract gave the buyers no prejudgment claim[4] against the debt evidenced by the purchase money promissory notes that would prevent their transfer or constitute any defense to payment of them. Nor did Cushway's assignment of the purchase money promissory notes and mortgages to Niesz in any manner constitute any assumption by Niesz of Cushway's in personam liability to the buyers for money damages for the breach of Cushway's covenant in the sales contract relating to the *449 condition of the building. Niesz, not Cushway, owned the indebtedness evidenced by the purchase money notes and mortgages at the time of judgment and Cushway, not Niesz, was responsible for Cushway's breach of contract liability. Therefore, it was error for the trial court to attempt to set off Cushway's liability for breach of contract against the indebtedness owed Niesz on the purchase money notes and mortgages. The judgment entered below is reversed and the cause is remanded for entry of judgment in favor of Niesz on the buyers' action (Case No. 80-320-CA-01-K) and for consideration of Niesz' mortgage foreclosure action (Case No. 80-4159-CA-01-K).
REVERSED AND REMANDED.
ORFINGER, C.J., and SHARP, J., concur.
NOTES
[1] 7 S. Williston, A Treatise on the Law of Contracts § 926 n. 16 (3d Ed. 1963).
[2] Contracts for the sale and purchase of real estate are most commonly fully executed at closing, see, e.g., Sun First National Bank of Orlando v. Grinnell, 416 So.2d 829 (Fla. 5th DCA 1982) [1982 FLW 1235], but sometimes, as here, contain covenants that are not fully performed at or before closing.
[3] 5 Corbin on Contracts § 1104 (1964).
[4] As to attachment before debt is due, see section 76.05, Florida Statutes (1981); as to garnishment before judgment, see section 77.031, Florida Statutes (1981).